ORDERED.

Dated:  October 29, 2021

_____
Roberta A. Colton
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

Hallucination Media, LLC,

    Debtor.
_____/

Case No. 8:16-bk-04116-RCT
Chapter 11

Hallucination Media, LLC,

    Plaintiff,

vs.

The Ritz Ybor, LLC, N.C.J. Investment Company,
Joe Capitano, Jr., Amphitheatre Events, LLC,
and John A. Santoro,

    Defendants.
_____/

Adv. No. 8:19-ap-00134-RCT

**MEMORANDUM DECISION AND ORDER
GRANTING, IN PART, AND DENYING, IN PART,
DEFENDANTS RITZ YBOR, LLC, JOSEPH CAPITANO, JR., AND N.C.J.
INVESTMENT COMPANY'S AMENDED MOTION FOR SUMMARY JUDGMENT**

THIS PROCEEDING is considered following oral argument on Defendants Ritz Ybor, LLC, Joseph Capitano, Jr., and N.C.J. Investment Company's (collectively, the "Ritz Defendants") Amended Motion for Summary Judgment (Doc. 61) (the "Motion"), the affidavit of Joseph Capitano, Jr. ("Mr. Capitano") in support of the Motion (Doc. 62), Plaintiff

Hallucination Media, LLC's response in opposition (Doc. 73) (the "Response"), and the Ritz Defendants' reply (Doc. 78).

The Ritz Defendants seek summary judgment on all counts of Plaintiff's complaint,[1] primarily based upon, but not limited to, the operation of the statute of frauds. As to Count I, the Ritz Defendants assert that there is no written agreement to share control, profits, and losses necessary to establish a partnership nor, additionally, to legally bind the other party necessary to establish a joint venture. Similarly, as to Count II, the Ritz Defendants assert that there is no written agreement providing Plaintiff with a right of first refusal. As to Count III, the Ritz Defendants contend not only that there is no written lease agreement but also that the agreement alleged does not provide for the exclusive right to possess the real property necessary to establish a "lease" that would be subject to the provisions of Chapter 83 of the Florida Statutes. Regarding Count IV, the Ritz Defendants assert that Mr. Capitano cannot be liable for tortious interference as he was, at all relevant times, not considered a separate entity to the alleged contracts as he was acting as an agent for Ritz Ybor and not in his individual capacity. Further, the Ritz Defendants claim that they were within their rights to terminate the relationship with Plaintiff and that even if that were not the case, their actions would amount to a breach of contract which cannot be converted into a tort. Finally, as to Count V, the Ritz Defendants argue that the claim fails because the statute of frauds may not be circumvented by an action for fraud.

Citing the emails exchanged and documents attached to those emails, Plaintiff disagrees with the Ritz Defendants' argument that writings sufficient to satisfy the statute of frauds do not exist. But as an initial matter, Plaintiff argues that the Motion must be denied because the Ritz Defendants did not raise the statute of frauds as an affirmative defense in their answer. The

---

[1] Doc. 2 ("Compl."). The Complaint is not verified and, thus, is not considered as part of the evidentiary record on summary judgment. References to the Complaint are included for illustrative purposes only.

Response answers the Motion's remaining arguments, if at all, largely with conclusory denials.[2]

In support of the Motion, the Ritz Defendants proffered Mr. Capitano's affidavit. Plaintiff offers no evidence counter to Mr. Capitano's affidavit, other than a declaration of one of its principals averring to the statements made in the Response. The Response, however, is a hodge-podge of factual assertions, unsupported denials, arguments that are largely conclusory, and Plaintiff's conclusions of law. The Court considers only the properly supported factual assertions in the Response in rebuttal to Mr. Capitano's affidavit.[3]

The Court has considered the summary judgment record, together with the relevant case law, and the arguments of counsel made at oral argument on the Motion. For the reasons stated below, the Court concludes that the Motion should be granted, in part.

**Undisputed Facts**

Before its own Chapter 7 bankruptcy,[4] Defendant Ritz Ybor, LLC ("The Ritz") operated a special events venue located at 1503 East 7th Avenue, Tampa, Florida 33605 (the "Venue"). The Venue is owned by Defendant N.C.J. Investment Company ("NCJ"). Mr. Capitano was the managing member of The Ritz. Although a shareholder in NCJ, Mr. Capitano did not control, legally or otherwise, NCJ nor did he, at any relevant time, act on behalf of NCJ.[5]

Plaintiff and its managing members, Bryan Nichols and Steven McClure,[6] promoted and produced "club nights" at the Venue, *i.e.*, dance events with a disk jockey, on most Friday nights

---

[2] At oral argument, counsel for Plaintiff took issue with whether the Motion went beyond the argument that the statute of frauds barred Plaintiff's claims due to the lack of a writing.

[3] *See Atl. Specialty Ins. Co. v. Digit Dirt Worx, Inc.*, 793 F. App'x 896, 902 (11th Cir. 2019) ("[C]ourts may disregard statements that are not based on personal knowledge or are inadequately supported." (citing *Pace v. Capobianco*, 283 F.3d 1275, 1278–80 (11th Cir. 2002)); *see generally* Fed. R. Civ. P. 56(c)(4) (incorporated by Fed. R. Bankr. P. 7056).

[4] *In re The Ritz Ybor, LLC*, Case No. 8:17-bk-07387-CPM (Bankr. M.D. Fla. filed Aug. 22, 2017). The Ritz's chapter 7 case was closed March 8, 2021. Plaintiff filed a secured claim in that case based upon the claims asserted in this proceeding. It received no distribution on its claim from the bankruptcy estate.

[5] Doc. 62 (Aff. of Joseph Capitano, Jr. ("Capitano Aff.")) ¶¶ 3, 5, 6, & 7.

[6] Capitano Aff. ¶ 9; Response ¶ 5.

from August 2013 to May 6, 2016, some Saturday nights, and various other nights from time to time (the "Promoted Events").[7] The Promoted Events generated door and bar revenues, which the parties agreed to share.[8] According to the Ritz Defendants, Plaintiff shared in these revenues in the same manner as other promoters as part of The Ritz's "customary course of business operations."[9] Mr. Capitano, in his individual capacity, did not share in the revenues generated.[10] Whether the revenue sharing agreement among the parties extended into a larger sharing of profits and losses is disputed.

Expenses for the Promoted Events were also shared.[11] With limited exceptions, the Ritz Defendants provided and paid for personnel and supplies associated with the Promoted Events.[12] Certain improvements were made to the Venue at the suggestion of Plaintiff, which were paid for by the Ritz Defendants.[13] According to Plaintiff, regardless of "who wrote the check," it was agreed that the costs of the improvements were obligations of the partnership.[14] Similar to the dispute involving the revenue sharing agreement, whether the sharing of expenses among the parties was part of a larger sharing of profits and losses is disputed.

The nature and extent of the business relationship among the parties, if any, is documented in a series of email exchanges that occurred in June 2013, September 2014, and December 2015 through January 2016.[15] In the latter most exchange, it is clear that the relationship had soured as they began to discuss a possible end to the relationship.[16]

The relationship among the parties apparently came to an end in April 2016, with

---

[7] Capitano Aff. ¶¶ 9, 10, & 18; *see also* Compl. ¶ 16.
[8] Capitano Aff. ¶¶ 10, 11, & 14.
[9] Capitano Aff. ¶ 14.
[10] Capitano Aff. ¶ 12.
[11] Capitano Aff. ¶ 14.
[12] *Id.*; Response ¶ 20.
[13] Capitano Aff. ¶¶ 15–16; Response ¶ 20.
[14] Response ¶ 20.
[15] Capitano Aff. ¶¶ 10, 21, & 22; Capitano Aff. Exs. B, C, & D.
[16] Capitano Aff. ¶ 23 & Ex. D.

Plaintiff's final promoted event at the Venue occurring on May 6, 2016.[17] Plaintiff's bankruptcy was filed less than a week later.

The Venue was marketed and used for events other than the "club nights" promoted by Plaintiff. Plaintiff did not have exclusive rights to host or promote events at the Venue.[18]

Plaintiff sues the Ritz Defendants based upon the unraveling of the business relationship. The nature and extent of that business relationship is the central issue in this litigation.

### Positions of the Parties

Though they concede there was some form of a business relationship in existence, the Ritz Defendants assert that any relationship Plaintiff had was solely with The Ritz and, at most, Plaintiff was granted a license to use the Venue during limited hours and days on a week-to-week basis. Plaintiff contends the relationship was a partnership or joint venture and further that it held a three-year lease to the Venue on certain nights with a right of first refusal on future agreements for those nights.

### Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[19] The mere existence of a factual dispute will not defeat a properly supported motion for summary judgment.[20] "Only the existence of a genuine issue of material fact will preclude summary judgment."[21] The initial burden of showing that there are no genuine issues of material fact is

---

[17] Compl. ¶¶ 30–34. Plaintiff alleges that a "rival club" interfered with its relationship with the Ritz Defendants by negotiating a long-term lease of the Venue following a fire at the rival's previous location. The rival, Amphitheatre Events, and its principal, Mr. John Santoro, have been dismissed as defendants from this adversary. Doc. 82.
[18] Capitano Aff. ¶¶ 4, 10, & 13; *see also* Compl. ¶ 16 (noting "third party events").
[19] Fed. R. Civ. P. 56(a) made applicable here by Fed. R. Bankr. P. 7056.
[20] *Koehler v. Waypoint Res. Grp, LLC*, No. 8:18-cv-2017-T-60AAS, 2019 WL 5722117, at *1 (M.D. Fla. Nov. 5, 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).
[21] *Id.*

borne by the moving party.[22]

If the moving party satisfies its initial burden, the burden shifts and "the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact."[23] In so doing, the nonmoving party may not rely on the "mere allegations or denials of [its] pleadings."[24] Instead, the nonmoving party must offer facts supported by evidence which can be reduced to an admissible form.[25] Nonetheless, "[i]f there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor."[26]

### Discussion

To begin, the summary judgment record leaves something to be desired. The parties fundamentally disagree as to the import of the email discussions that, indisputably, form the factual predicate for Plaintiff's claims. But with the benefit of oral argument, the Court concludes that summary judgment is appropriate, at least in part.

*Pleading the Statute of Frauds*

The Ritz Defendants contend Plaintiff's claims cannot stand as they are based upon agreements not reduced to writing and therefore do not comply with the statute of frauds. Plaintiff strongly disagrees but, as an initial matter, responds that the Ritz Defendants have waived any such claim by failing to plead the statute of frauds as an affirmative defense.

While the Court agrees with Plaintiff that the Ritz Defendants did not plead the statute of frauds in their answer,[27] it does not agree that the Ritz Defendants are therefore barred from

---

[22] *Id*. (citing *Hickson Corp. v. N. Crossarm Co., Inc*., 357 F.3d 1256, 1260 (11th Cir. 2004)).
[23] *Id*. (citing *Jeffery v. Sarasota White Sox, Inc*., 64 F.3d 590, 593–94 (11th Cir. 1995)).
[24] *Walker v. Darby*, 911 F.2d 1573, 1576 (11th Cir. 1990).
[25] *Rowell v. BellSouth Corp.,* 433 F.3d 794, 800 (11th Cir. 2005).
[26] *Koehler v. Waypoint Res. Grp, LLC*, No. 8:18-cv-2017-T-60AAS, 2019 WL 5722117, at *1 (M.D. Fla. Nov. 5, 2019) (citing *Shotz v. City of Plantation*, *Fla*. 344 F.3d 1161, 1164 (11th Cir. 2003)).
[27] Doc. 13.

asserting the defense now. As the Ritz Defendants correctly note, courts have held that a failure to plead an affirmative defense as required by Rule 8(c) of the Federal Rules of Civil Procedure ("Rule(s)")[28] is not necessarily fatal and that the unpled affirmative defense may nevertheless be asserted and further proven at trial provided the plaintiff is on notice of the defense.

> When a plaintiff has notice that an affirmative defense will be raised at trial, the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice. And, when the failure to raise an affirmative defense does not prejudice the plaintiff, it is not error for the trial court to hear evidence on the issue.[29]

Plainly, Plaintiff is now on notice of the Ritz Defendants' assertion of the statute of frauds defense. Reviewing the record, the Court finds it difficult to conclude that the defense comes as a complete surprise to Plaintiff. The Ritz Defendants' answer strongly suggests the defense as they acknowledge the emails exchanged but assert that no formal agreements were ever finalized and claim instead that "at best" Plaintiff had a license to use the Venue. For that matter, correspondence from Plaintiff's counsel attached to the Complaint demonstrates that the enforceability of any alleged agreement was at issue due to the statute of frauds.[30]

But the fact that the Ritz Defendants may now raise their statute of frauds defense does not mean that they are necessarily entitled to summary judgment, at least not at this time. At oral argument, Plaintiff's counsel suggested that he did not conduct detailed discovery on the issue given the Ritz Defendants' failure to plead. Accordingly, and notwithstanding that the Ritz Defendants have not sought leave to amend their answer, the Court will deem the Ritz Defendants' answer amended to assert the statute of frauds defense and further will also allow limited discovery on the issue as it relates to Plaintiff's breach of partnership and breach of the

---

[28] Fed. R. Civ. 8 is incorporated herein by Fed. R. Bankr. P. 7008.
[29] *Bergquist v. Fidelity Info. Servs., Inc.*, 197 F. App'x 813, 815 (11th Cir. 2006) (quoting *Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988)); *see, e.g.*, *Grant v. Preferred Rsch., Inc.*, 885 F.2d 795, 797–98 (11th Cir. 1989) (approving of a district court's consideration at trial of a statute of limitation defense asserted initially in a motion for summary judgment filed a month before trial).
[30] Compl. Ex. K.

right of refusal claims.  New discovery deadlines will be set by a forthcoming scheduling order.

*Counts I & II – Breach of the Partnership & Breach of Right of First Refusal*

Assuming without deciding that the Ritz Defendants have met their initial burden on summary judgment, the Court finds that Plaintiff has demonstrated the existence of triable issues of material fact.  It is undisputed that the parties had some degree of business relationship involving the Promoted Events and for that matter that the revenues and expenses for those events were shared.  Whether that sharing rises to the level of a partnership or joint venture remains to be seen.  The summary judgment record as it stands is a pair of dueling affidavits from individuals who participated in the parties' negotiations and simply does not clearly define the business relationship.  Without such clarity, it is difficult to determine whether the statute of frauds would bar Plaintiff's claims.

For this reason, summary judgment on Counts I and II is due to be denied.  However, as indicated above, the Court will reopen discovery limited to the issue of the statute of frauds as it relates to Plaintiff's breach of partnership and breach of the right of refusal claims.

*Count III – Statutory Action under Florida Statutes § 83.05*

The Ritz Defendants make two arguments as to Count III.  First, there is no written lease agreement among the parties as to the Venue that would satisfy the statute of frauds.  Second, the agreement alleged does not provide for the exclusive right to possess the property necessary to establish a "lease" that would be subject to the provisions of Chapter 83 of the Florida Statutes.  Plaintiff addressed only the first argument in the Response but both at oral argument.

It is not disputed that there is no formal written lease for the Venue between Plaintiff and either The Ritz or NCJ.  Rather, Plaintiff asserts that the email correspondence reflects its right to possession of the Venue "as a tenant."  At oral argument, Plaintiff also highlighted the fact that it

8

had procured insurance consistent with a tenancy and that Plaintiff had keys to the premises and "24/7 access."[31] The Ritz Defendants effectively concede that whatever the business relationship among the parties may have been, it arose from the email correspondence. But they argue that Plaintiff had, if anything, merely a license to use the Venue for the Promoted Events.

Viewing the record more favorably to Plaintiff as it must, the Court might very well conclude on the issue of the statute of frauds that Plaintiff had raised a triable issue of fact. But the Court need not make that determination as it finds the second issue dispositive. The agreement alleged here is not properly characterized as a lease.[32]

Because Plaintiff seeks damages for an alleged violation of Florida Statute § 83.05,[33] the Court looks to Florida law to decide the matter. Florida law provides that the "proper characterization" of an agreement involving rights to real property "is discerned by the actual terms, conditions, rights and obligations expressly set forth in the agreement."[34] Here, the Court must determine if the parties' "agreement" is fairly characterized as a lease or, as the Ritz Defendants suggest, a license.[35]

> A tenant under a lease is one who has been given a possession of land which is exclusive even of the landlord except as the lease permits his entry, and saving

---

[31] Yet, counsel for Plaintiff also agreed that evidence of these matters, which were raised at oral argument, were not properly made part of the summary judgment record.

[32] *Cf. Taxinet, Corp. v. Leon*, No. 16-24266-COV-MORENO/LOUIS, 2020 WL 4501938, at *8 (S.D. Fla. May 28, 2020) (indicating that when analyzing a statute of frauds defense a "threshold question" is whether there is a contract under applicable law).

[33] Though it declines to address the matter here, the Court observes that Fla. Stat. § 83.05 is silent on the issue of tenant's damages and does not appear to provide a cause of action to either landlord or tenant.

[34] *Nazia, Inc. v. Amscot Corp.*, 275 So. 3d 702, 706 (Fla. Dist. Ct. App. 2019) (quoting *Midgard Mgmt., Inc. v. Park Ctr. Med-Suites, LLC*, 114 So. 3d 302, 307 (Fla. Dist. Ct. App. 2013)).

[35] *See MH New Invs., LLC v. Dep't of Transp.*, 76 So. 3d 1071, 1072 (Fla. Dist. Ct. App. 2011) (citations omitted) ("Since a license to use real property is a privilege to use, not an interest in real property, business damages may not be predicated upon a license to use real property. The terminology used is not dispositive, however. Courts look to what a thing is, not what it is called. By its nature, a license is permissive and readily revocable at the option of the owner."); *Devlin v. The Phoenix, Inc.*, 471 So. 2d 93, 95 (Fla. Dist. Ct. App. 1985) ("A license, whether express or implied, is not a right but is a personal privilege, not assignable without express permission. Not being an interest in land it is not subject to the statute of frauds. A 'license' is defined to be an authority to do a particular act, or series of acts, upon another's land without possessing any estate therein. No consideration is required to create a license. The distinctive characteristic of a license is that it may always be made by parol and that it is, in its very nature, necessarily revocable at will.") (citations omitted)).

always the landlord's right to enter to demand rent or to make repairs. A licensee is one who has a mere permission to use land, dominion over it remaining in the owner and no interest in or exclusive possession of it being given to the occupant.[36]

Upon thorough review, the Court can find nothing in the record to suggest that Plaintiff had a right to possess the Venue exclusive of anyone, much less the Ritz Defendants. Rather, the summary judgment record demonstrates that the parties not only worked together at the Promoted Events but also that the Venue was marketed and used for events other than those promoted by Plaintiff. At oral argument, Plaintiff emphasized it had "24/7 access" to the Venue. But access is equally consistent with a license. And the insurance policy declaration pages that Plaintiff attached to the Complaint, which Plaintiff concedes are not properly part of the summary judgment record, indicate that the policy was in effect only on intermittent dates.[37]

Lacking the right to exclusive possession of the Venue, Plaintiff cannot be said to have had a lease under Florida law such that the provisions of Chapter 83 might apply. Summary judgment in favor of the Ritz Defendants is therefore appropriate as to Count III.

*Count IV – Tortious Interference with Contracts and Business Relationships*

As it stands,[38] Count IV is advanced solely against Mr. Capitano in his individual capacity. The record reflects, however, that Mr. Capitano did not participate in nor financially benefit from the Promoted Events in that capacity. Plaintiff offers nothing more than an unsupported denial to oppose this conclusion.[39] For this reason alone, summary judgment is due

---

[36] *Turner v. Fla. State Fair Auth.*, 974 So. 2d 470, 473–74 (Fla. Dist. Ct. App. 2008) (quoting *Seabloom v. Krier*, 219 Minn. 362, 18 N.W.2d 88, 91 (1945) (internal quotations omitted)).

[37] Compl. Ex. I. Plaintiff's counsel also referenced the correspondence used by the Ritz Defendant to terminate the business relationship which referred to the relationship as a tenancy. Again, these communications, which are found as Ex. J to the Complaint, are not part of the summary judgment record. But even so, it is the terms of the agreement that control the analysis not communications thereafter. For that matter, "terminology used is not dispositive . . . . Courts look to what a thing is, not what it is called." *MH New Invs., LLC*, 76 So. 3d at 1072.

[38] By prior order, summary judgment was granted to John Santoro and Amphitheatre Events, LLC as to Count IV. Doc. 82.

[39] Response ¶ 31.

to be granted.[40] But here there is more.

The relevant portions of the Complaint do not allege that Mr. Capitano acted outside the scope of his role as agent.[41] As such, and as conceded by Plaintiff's counsel at oral argument, Plaintiff's claim against Mr. Capitano cannot stand to the extent it is based upon interference with the alleged agreement among Plaintiff, The Ritz, and NCJ.[42]

Nonetheless, to save its claim, Plaintiff argues that it has also alleged that Mr. Capitano interfered with "other" contracts for which he might be held liable. But these contracts are not identified in the Complaint, much less in response to summary judgment. And neither the Complaint nor the Response describe any act of interference with these unidentified contracts by Mr. Capitano, as agent or otherwise. Plaintiff's claim as to these "other" contracts therefore does not even survive an analysis under Rule 12(b)(6).

*Count V – Fraudulent Inducement*

The Ritz Defendants argue that the fraudulent inducement claim fails because the Plaintiff may not circumvent the statute of frauds by bringing an action for fraud. Plaintiff does not address this argument in its Response. The Ritz Defendants are, of course, correct on the law.[43] But their argument, which is as conclusory as the Response is silent, also somewhat

---

[40] *See Atl. Specialty Ins. Co.*, 793 F. App'x at 902.
[41] In Count IV, Plaintiff asserts that the actions described in ¶¶ 30–35 constituted the unjustified interference; however, those paragraphs described actions taken by the "Property Owners," which are not defined to include Mr. Capitano. ¶ 15. The allegations are consistent with the general allegations that Mr. Capitano "[a]t all relevant times . . . was an actual agent" for The Ritz and NCJ. ¶¶ 12–13.
[42] *See Club Exploria, LLC v. Aaronson, Austin, P.A.*, No. 6:18-CV-576-ORL-28DCI, 2019 WL 1297964, at *5 (M.D. Fla. Mar. 21, 2019) ("[A]n agent of a party to the contract, 'acting within his capacity and scope as an agent, cannot be considered to be a separate entity outside of the contractual relationship [that] can tortiously interfere with that relationship.'" (quoting *Cedar Hills Props. Corp. v. Eastern Fed. Corp.*, 575 So. 2d 673, 676 (Fla. Dist. Ct. App. 1991)); *West v. Troelstrup*, 367 So. 2d 253, 255 (Fla. Dist. Ct. App. 1979).
[43] *See, e.g.*, *940 Lincoln Rd. Assocs. LLC v. 940 Lincoln Rd. Enters., Inc.*, 237 So. 3d 1099, 1102 (Fla. Dist. Ct. App. 2017) ("It is well settled that a party cannot avoid the writing requirement of the statute of frauds by reformulating what amounts to a breach of an oral contract claim into a fraud claim."); *LynkUs Commc'ns, Inc. v. WebMD Corp.*, 965 So. 2d 1161, 1166 (Fla. Dist. Ct. App. 2007) ("[U]nder the statute of frauds, 'an action for damages cannot be maintained on the ground of fraud in refusing to perform the [oral] contract, even though the defendant at the time of the making of the oral contract may have had no intention of performing it.' " (quoting

misconstrues the nature of Plaintiff's claims which are not based upon an "oral" contract.

But with the benefit of oral argument, the Court better understands the Ritz Defendants' argument and Plaintiff's response, as well as Plaintiff' underlying claim. And based upon that understanding, the Court concludes that the Ritz Defendants are entitled to summary judgment based upon the application of Florida's independent tort doctrine.[44]

This case is, if anything at all, an action for breach of contract. There is no evidence put forth, nor really any allegation made, of a material misrepresentation by the Ritz Defendants distinct from matters related to the claimed breach of the alleged partnership agreement. Rather, Plaintiff simply takes issue that the Ritz Defendants deny that certain terms Plaintiff believes were made part of the agreement are, in fact, part of that agreement. Said differently, Plaintiff alleges that the Ritz Defendants' promises to perform under the alleged partnership and lease agreements were fraudulent.

In Florida, "[i]t is a fundamental, long-standing common law principle that a plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of contract."[45] While it is true that "fraud in the inducement [may be considered] an independent tort [where] the alleged misrepresentation inducing one to enter into the contract is unrelated to the obligations under the contract,"[46] that is not what Plaintiff claims here. The

---

*Canell v. Arcola Hous. Corp.*, 65 So. 2d 849, 851 (Fla. 1953))).

[44] *See, e.g.*, *Barrakuda Ltd. v. Zazaby Jewels, Inc.*, No. 19-23004-CV-MARTINEZ-OTAZO-REYES, 2021 WL 2454467, at *4–5 (S.D. Fla. May 14, 2021); *Un2jc Air 1, LLC v. Whittington*, No. 4D20-1449, 2021 WL 2672915, at *2 (Fla. Dist. Ct. App. June 30, 2021); *see generally Inspirations Nevada LLC v. Med Pro Billing, Inc.*, No. 20-CV-60268-STRAUSS, 2021 WL 2156677, at *4–5 (S.D. Fla. May 26, 2021) (recognizing that the independent tort doctrine and its related doctrine, the economic loss rule, have "spurred much debate" since the Florida Supreme Court's decision in *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos.*, 110 So. 3d 399 (Fla. 2013), yet also acknowledging that since the Florida Supreme Court's decision, Florida's appellate courts have reaffirmed the application of the independent tort doctrine).

[45] *Island Travel & Tours, Co. v. MYR Indep., Inc.*, 300 So. 3d 1236, 1239 (Fla. Dist. Ct. App. 2020); *see Elec. Sec. Sys. Corp. v. S. Bell Tel. & Tel. Co.*, 482 So. 2d 518, 519 (Fla. Dist. Ct. App. 1986) ("It is only when the breach of contract is attended by some additional conduct which amounts to an independent tort that such breach can constitute [an actionable claim in tort].").

[46] *Island Travel & Tours*, 300 So. 3d at 1240 n.7; *see Rossi v. Darden*, No. 16-21199-CIV-

"misrepresentations" alleged relate to the Ritz Defendants' claimed breach under the agreement rather than tortious conduct distinct from the performance under the contract. Accordingly, an action for fraudulent inducement cannot lie.[47]

Because there is no evidence to show a material misrepresentation by the Ritz Defendants separate and apart from the obligations allegedly breached by them, Plaintiff's fraudulent inducement claim is barred by Florida's independent tort doctrine.[48] Summary judgment in favor of the Ritz Defendants is therefore appropriate as to Count V.

For these reasons, it is **ORDERED**:

1. The Motion (Doc. 61) is **GRANTED in part and DENIED in part**, as follows.

2. The Court grants summary judgment in favor of all Defendants on Counts III and V of Plaintiff's complaint.

3. The Court also grants summary judgment in favor of Joseph Capitano, Jr. on Count IV of Plaintiff's complaint.

4. Insofar as the Motion is based upon the statute of frauds, summary judgment is denied on Counts I and II of Plaintiff's complaint, without prejudice. The Ritz Defendants' answer is deemed amended to assert the statute of frauds affirmative defense. By subsequent order, the Court will authorize limited discovery on the affirmative defense as it relates to the remaining two counts of the Complaint.

Service of this Order other than by CM/ECF is not required. Local Rule 9013-3(b).

---

ALTONAGA/O'Sullivan, 2016 WL 11501449, at *9–10 (S.D. Fla. July 19, 2016) (finding that because plaintiffs had alleged that defendants made misrepresentations "materially separate from any fraud that may have occurred during performance of the contract," they had pled a plausible claim for fraudulent inducement separate from their breach of contract claim).

[47] *See Barrakuda Ltd.*, 2021 WL 2454467, at *5; *LynkUs Commc'ns, Inc.*, 965 So. 2d at 1166–67.

[48] *See Lifecell IP Holdings, LLC v. Cosmedique, LLC*, No. 19-CV-60978-RAR, 2021 WL 3038946, at *5–6 (S.D. Fla. June 7, 2021), *report and recommendation adopted*, No. 19-CV-60978-RAR, 2021 WL 3038524 (S.D. Fla. July 19, 2021); *Barrakuda Ltd.*, 2021 WL 2454467, at *5; *Island Travel & Tours*, 300 So. 3d at 1239–40.